**Christine HESSLER, Appellant,**

v.

**LABOR & INDUSTRIAL RELATIONS COMMISSION, et al.,
Respondents.**

No. 75298.

Supreme Court of Missouri,
En Banc.

April 20, 1993.

Dennis J. Capriglione, St. Louis, for appellant.

Larry R. Ruhmann, St. Louis, Victorine R. Mahon, Jefferson City, for respondents.

ROBERTSON, Chief Justice.

With certain limitations, Section 288.-050.1, RSMo Supp.1992, denies waiting week credit or unemployment benefits to an employee who "has left his work voluntarily without good cause attributable to his work or to his employer." In this case we consider whether an employee who voluntarily terminates her employment for health reasons without permitting her employer the opportunity to accommodate her health concerns, quits with "good cause." The Labor and Industrial Relations Commission ("Commission") affirmed the decision of the referee denying the employee unemployment benefits.

The employee also challenges the constitutionality of Section 351.935(1), RSMo Cum.Supp.1991, which purports to allow an employee designated by a corporation to appear before an administrative proceeding, whether or not that employee is an attorney. Though we do not reach this issue, it provides the basis for our jurisdiction. Mo. Const. art. V, § 3.

The judgment is affirmed.

### I.

We take the facts as found by the Commission. Section 288.020, RSMo 1986.

Suburban Business Products ("Suburban") employed Christine Hessler, the employee/appellant, at the time of her voluntary termination. Hessler worked as a billing clerk and receptionist.

On August 3, 1990, Hessler learned she was pregnant. Although the record is not

entirely clear, it appears that she experienced vaginal spotting shortly after she learned of the pregnancy. Hessler's doctor advised her "to take the day off and stay in bed." Hessler followed her doctor's instructions and stayed home. The following day the doctor released her to return to work without restrictions.

Hessler returned to work on August 28, 1990. On September 4, 1990, she voluntarily terminated her employment. She did not confer with her employer as to her health problems, nor did she provide the employer with any indication of her doctor's advice that she remain off her feet, prior to quitting. On October 29, 1990, Hessler's doctor wrote a general letter stating that she "had to quit her job in the face of problems arising from the pregnancy; vis-a-vis, vaginal bleeding and threatened abortion because she was bedridden and because she felt she would lose her job." At the hearing, Hessler testified that she quit because of the vaginal bleeding and job stress.

Hessler filed a claim for unemployment compensation benefits. The referee of the Missouri Division of Employment Security found that Hessler had voluntarily terminated her employment without good cause and disqualified her for benefits until she earned wages equal to ten times her weekly benefit amount. Section 288.050.1.

■ Hessler appealed to the Commission. During its hearing, the Commission heard the testimony of Hessler and Ms. Janet Kahl, Suburban's operations manager. The Commission affirmed, as did the Circuit Court of St. Louis County. The Commission found that Hessler never informed her employer that she needed to be off her feet and in a less stressful job. The Commission concluded that Hessler did not quit her job because of medical problems attributable to her pregnancy. The Commission founded its decision on Hessler's doctor's full release to return to work prior to her voluntary termination and the absence of a medically-supported reason for quitting. We review the decision of the Commission to determine whether it is based on competent and substantial evidence on the whole record.

## II.

■ The claimant bears the burden of showing that her voluntary termination results from good cause attributable to her work or her employer. *O'Dell v. Division of Employment Security*, 376 S.W.2d 137, 142 (Mo.1964).

■ Section 288.050.1 makes good cause a condition precedent to immediate receipt of unemployment compensation benefits where the employee voluntarily quits his or her job. The statute bespeaks a legislative intention to create an incentive for employed persons to remain employed by withholding benefits from those who quit their job without good cause.

Missouri courts have interpreted good cause as

> cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.... [Good cause] is positive conduct which is consistent with a genuine desire to work and be self-supporting.... [T]he circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element.

*Belle State Bank v. Industrial Commission*, 547 S.W.2d 841, 846 (Mo.App.1977).

■ An employee's good cause, subjectively measured, does not avoid the statute's harsh result. Section 288.050.1 requires that good cause be "attributable to his work or to his employer." We take this language to mean that it must be the work or employer himself that creates the condition making it unreasonable to expect *this employee* to continue work.

■ Taking Hessler's reasons for quitting as true—she needed to be off her feet, her condition was work-stress related—she still has the burden of showing that her employer failed to provide a less stressful position that allowed her to be off her feet. Hessler did not attempt to determine her employer could accommodate her special needs. Nor did Hessler show that her

pleas for special treatment were rejected. Her claim of good cause, therefore, cannot be said to have been made in good faith. She cannot now justifiably claim that the cause of her voluntary termination, no matter how good the cause seemed to her, was attributable to her work or employer as the law requires.

Hessler's second point challenges the constitutionality of Section 351.935(1), RSMo 1992. Specifically, Hessler claims that Section 351.935 unconstitutionally usurps the power granted exclusively to this Court to regulate the practice of law before state agencies. We do not reach this point as Hessler, through her own testimony, failed to carry her burden of demonstrating an entitlement to unemployment benefits under Section 288.050. Hessler's challenge to the constitutional validity of Section 351.935(1) is not properly before this Court and we review the point no further.

### III.

Having failed to meet the burden of showing good cause attributable to her work or employer, Hessler is not entitled to unemployment benefits. The judgment is affirmed.

All concur.