Katherine J. Rodgers, Kansas City, MO, Guardian ad litem.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and CYNTHIA L. MARTIN, Judges.

**Felicia ANTHONY, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 73489.**

Missouri Court of Appeals,
Western District.

Nov. 8, 2011.

Felicia Anthony, Appellant pro se.

Roger Dyer and Larry R. Ruhmann, Jefferson City, MO, for respondent.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, JAMES M. SMART, JR., Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Felicia Anthony appeals the decision of the Labor and Industrial Relations Commission denying her unemployment benefits. We reverse and remand.

## Factual Background

Felicia Anthony ("Anthony") worked as an assembler for Potter Electric Signal Company, LLC ("Employer") from April 1997 to June 2010. Anthony, in mid-June 2010, gave notice to her employer that she had to leave her position to be with her husband. She informed them that her husband was on active duty in the United States Marine Corps and he was being transferred to Texas in July 2010.

Anthony filed for unemployment benefits on July 21, 2010. The Division's deputy determined that Anthony was disqualified from benefits because she voluntarily quit her job without good cause attributable to her work or employer. Anthony appealed the decision to the Division's Appeals Tribunal, which conducted a telephone hearing. The Appeals Tribunal affirmed the deputy's decision, finding that Anthony's decision to move was voluntary. Anthony then appealed to the Labor and Industrial Relations Commission ("Commission"). The Commission affirmed and adopted the decision of the Appeals Tribunal. One member of the Appeals Tribunal issued a dissenting opinion which argued Anthony's decision to quit her employment was not voluntary. Anthony now appeals.

## Standard of Review

■■■ Section 288.210 [1] sets this Court's standard of review for appeals from final awards of the Commission. That section provides that:

The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 288.210; *Weirich v. Div. of Emp't Sec.*, 301 S.W.3d 571, 574 (Mo.App. W.D. 2009). "In the absence of fraud, the Commission's factual findings are conclusive and binding on this Court if supported by competent and substantial evidence." *Ragan v. Fulton State Hosp. & Div. of Emp't Sec.*, 188 S.W.3d 473, 474 (Mo.App. E.D. 2006) (citing Section 288.210). "Our function is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Id.* (quoting *Shields v. Proctor & Gamble Paper Prods. Co.*, 164 S.W.3d 540, 543 (Mo.App. E.D.2005)). "On matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations." *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 198 (Mo.App. W.D.2007) (citing *Willcut v. Div. of Emp't*

*Sec.*, 193 S.W.3d 410, 412 (Mo.App. E.D. 2006)). On the other hand, "on appeal, we are 'not bound by the Commission's conclusions of law or the Commission's application of law to the facts.'" *Hoover v. Cmty Blood Ctr.*, 153 S.W.3d 9, 12 (Mo. App. W.D.2005) (quoting *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 664 (Mo.App. W.D.2003)).

## Analysis

■■■ In her sole Point on appeal, Anthony argues the Commission erred in determining that she was disqualified from receiving unemployment benefits because she did not terminate her employment voluntarily.

Section 288.050 provides that a claimant is disqualified from receiving unemployment benefits if "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." Section 288.050.1(1). The issue before us is relatively straightforward. Anthony concedes that she terminated her employment because she desired to move to Texas with her husband. She does not contend that she had "good cause attributable to her employer." Nor could she, for "a worker who leaves his employment under compulsion of marital or parental obligation has left his work voluntarily without good cause because his reasons for termination lack the causal connection with his employment which is required by the statute." *Lyell v. Labor and Indus. Relations Comm'n Div. of Emp't Sec.*, 553 S.W.2d 899, 901 (Mo.App.1977); *see also Baker v. Midway Enterprises, Inc.*, 78 S.W.3d 188, 193 (Mo.App. W.D.2002).[2]

---

1. All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

2. In 2011, the Missouri Legislature passed an amendment to section 288.050, which excludes from disqualification claimants who

"quit work to relocate with the spouse to a new residence" "due to the spouse's mandatory and permanent military change of station order" so long as "it is impractical to commute to the place of employment and the claimant remained employed as long as was

The question then remains whether Anthony left her work "voluntarily." Recently, this Court has expounded on the concept of whether a person has voluntarily terminated her employment. In *Brown v. Division of Employment Security,* we stated:

> The Missouri Supreme Court has defined "voluntary" as "proceeding from the will: produced in or by an act of choice," and held that "[t]his meaning requires a court to make a factual determination regarding voluntariness." *Difatta–Wheaton v. Dolphin Capital Corp.,* 271 S.W.3d 594, 598 (Mo. banc 2008) (internal quotation omitted). The Supreme Court noted that unemployment benefits were "for the benefit of persons unemployed through no fault of their own" and held that "those who leave work involuntarily are never disqualified from eligibility under [§ 288.050.1(1) ]." *Id.* (internal quotation omitted). In so holding, the Missouri Supreme Court reversed a large volume of case law that had held employees were per se disqualified for benefits in any case in which their reason for unemployment was a physical condition not attributable to the employer, i.e. pregnancy or illness. *Id.* at 598 n. 7. *Difatta–Wheaton* found that the employee's unemployment in that case was not voluntary because "[i]t cannot be said that she made a choice or was otherwise responsible for her ovarian cancer, its complications, or the timing of their occurrence. And, she took the steps necessary to preserve her employment given these uncontrollable factors." *Id.* at 599; *see also Korkutovic v.*

*Gamel Co.,* 284 S.W.3d 653, 657–58 (Mo. App. E.D.2009).

*Brown v. Division of Emp't Sec.,* 320 S.W.3d 748, 750–51 (Mo.App. W.D.2010). In *Brown,* we recognized the possibility that in some circumstances domestic abuse could rise to such a level whereby the victim would have no choice but to terminate her employment to escape physical harm. *Id.* at 751. Under these circumstances, such a decision would not be voluntary. *Id.* In that case, the court remanded the matter back to the Commission to make findings regarding whether Brown's termination of her employment was voluntary and to consider whether Brown had other reasonable options available to her and whether she acted reasonably with respect to her employment. *Id.*

In *Brown,* as in the case at bar, the Commission initially failed to make factual findings regarding whether the claimant's termination of her employment was voluntary. We believe that the issue of whether Anthony's decision to move with her husband to Texas was voluntary is an issue that needs further inquiry by the Commission. The Commission assumed that because Anthony made a conscious decision to quit employment then that decision was automatically voluntary. This was indeed the law prior to *Difatta–Wheaton* and *Brown. See White v. Div. of Emp't Sec.,* 930 S.W.2d 518 (Mo.App. W.D.1996) (holding the claimant left her job voluntarily and without good cause attributable to her employer when she quit her job after her husband received military orders transferring him to another state). This court has explicitly held that *Difatta–Wheaton* is not limited to its specific fact scenario involv-

---

reasonable prior to the move." *See* section 288.050.1(1)(e). However, this amendment was effective August 28, 2011 and therefore was not in effect at the time Anthony made her claim. Since the amendment is clearly substantive in application and not merely pro-

cedural, it cannot have retroactive effect per Article I, section 13 of the Missouri Constitution. *Burns v. Labor & Indus. Relations Comm'n,* 845 S.W.2d 553, 557 (Mo. banc 1993).

ing disease, but also addresses scenarios where the claimant must quit employment due to circumstances out of the worker's control and where the worker is not at fault. *See Johnson v. Div. of Emp't Sec.,* 318 S.W.3d 797, 802 (Mo.App. W.D.2010).

In light of recent case law, further inquiry is required in this case before a decision to quit employment can be deemed voluntary. In *Brown,* this Court recognized that in some cases in which the claimant makes a reasoned decision to quit employment, it does not necessarily mean that the decision was voluntary. *Brown,* 320 S.W.3d at 751. Factors external to the claimant may be so compelling that the decision to quit employment cannot be considered voluntary. This court has held in *Carter v. Division of Employment Security* that a mandatory military transfer of a claimant's spouse causes the claimant to be unemployed through no fault of her own. 350 S.W.3d 482, 485–86 (Mo.App. W.D. 2011). Therefore, the claimant has not voluntarily quit his or her job and is entitled to unemployment benefits so long as she acted reasonably with respect to her employment. As the Commission identified in its brief to this Court, the record contains factual questions that must be decided by the Commission (such as whether Anthony's husband was in fact mandatorily transferred to Texas as part of the active duty military and whether Anthony acted reasonably with respect to her employment prior to quitting).[3] *See Brown,* 320 S.W.3d at 751. The Commis-

sion cannot apply the law until these factual determinations have been made.

### Conclusion

The Commission's decision is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.

---

**3.** The Commission argues that evidence was in the record which shows that Anthony's husband was not transferred as an active duty member of the military. However, this ignores the Commission's own finding that "Claimant quit work on June 30, 2010 in order to move to Texas *due to her husband's military transfer.*" (Emphasis added.) While the statement is vague in that it does not say it was a mandatory military transfer as part of the active duty military, it does suggest the Commission believed Anthony's testimony that she moved to be with her husband who was transferred to Texas as a member of the military. The Commission does not argue *its own* finding was not supported by sufficient competent evidence.